## Pa. Department of Transportation v. Watson's Garage

*Kenneth B. Allen,* assistant counsel, for the Commonwealth.

*George Stenhach,* for appellant.

FINK, *P.J.,* January 24, 1985—Before this court is an appeal by one James J. Watson, d/b/a Watson's Garage, from a suspension order of the Department of Transportation concerning the operator's certificate of appointment as an official inspection station. The suspension order dated August 17, 1984, signed by the Director of the Bureau of Motor Vehicles read, in essence, as follows: allowing an uncertified mechanic to inspect motor vehicles, first count, three months; second count, six months; the last three counts, one year each or a total as to the uncertified mechanic charges of three years, nine months. There were also five counts of fraudulent record-keeping which resulted in a suspension for one year on the first count and a "permanent suspension" for the last four counts.

Both counsel agree that the only issue presented to this court on appeal is a legal one and that concerns the term "permanent suspension". It is necessary to first look at the purview of scope of authority of the court of common pleas on appeal from a suspension of certificate of appointment by the Director of the Bureau of Motor Vehicles. The common pleas court is a factfinder de novo on appeal from such an order, Commonwealth v. Marini, 25 Pa. Commw. 207, 360 A.2d 263 (1976). The court of common pleas determines only whether a person charged committed the violation for which suspension was imposed and may not reverse the director or modify penalties imposed simply because it believes the result was harsh, Commonwealth v. Demuro, 24 Pa. Commw. 480, 357 A.2d 270 (1976).

In Com. Dept. of Transp. Bureau of Traffic Safety v. Verna, 23 Pa. Commw. 260, 351 A.2d 694 (1976), it was indicated that the court of common pleas is limited in its decision solely to a determination of whether the person charged committed the violation for which the suspension was imposed. Therefore, it would appear to be a serious question at the outset as to whether or not this court could simply decide a singular legal issue as it relates to the interpretation of a statutory penalty.

This court would understand that the cases above cited simply say that a court of common pleas cannot be heard to supplant the imposition of penalty by the department with one of its own within the discretion of the trial judge. What other vehicle would appellant have to test the interpretation or construction of the statute as it relates to his particular case? We would believe that there is no other way and that the intent of the legislature was to provide a way for the appellate determination of such an issue through the means provided. We, there-

fore, conclude that such a determination is properly within the purview of the trial court.

Defendant's position on the substantive issue raised is that the term "permanent suspension" is inherently inconsistent, that is, the word "suspension" by defintiion is not "permanent" and, therefore, the two inconsistent words used together are so ambiguous and unclear as to violate the equal protection and due process clauses of the Constitution. Defendant cites the definition for the term "suspension" as being a *temporary* withdrawal of a privilege, whereas, the term "revocation" is to terminate permanently. (Emphasis added.)

Some statutes are construed by the courts to use the terms "suspension" and "revocation" interchangeably. Others are construed by courts of Pennsylvania in a manner to indicate that the legislative intent is to give each term a specific meaning as a "term of art". The duration of suspension is set forth in table form at 67 Pa. Code § 175.51, and it is set forth in table form. There are three instances where the term "permanent" is used in the "second violation" column and one of those refers to "fraudulent record-keeping".

This court is compelled to question, first of all, the conclusion of the certificate-holder that the term "permanent suspension" is, indeed, inherently contradictory, and we would also have to quibble somewhat with the definition of the respective terms "suspension" and "revocation". We would understand that when a privilege or certification or license is "suspended" it remains in existence but cannot be used by the licensee or certificate-holder until, if ever, the "suspension" is lifted. On the other hand, we would understand the term "revocation" to imply that the very right evidenced by the license or certificate was taken out of existence and, there-

fore, if the licensee or certificate-holder were ever again to be licensed, certified, or privileged, that person would have to get *another new* certificate or license. (Emphasis added.)

Therefore, we would conclude that a certificate or license could, indeed, be "suspended", that is, remain in existence but be "permanently" kept by the issuer and from the licensee or certificate-holder. It is a fine distinction and we are not even certain it is a useful one, however, this court is convinced that the intent of the legislature is clear, and the use of the term is not violative of any constitutional right or mandate.

We are somewhat concerned that the second through fifth "counts" are not necessarily tantamount to second and subsequent *"violations"*, however, this issue was not raised and we, therefore, believe that there was intended no problem in this area. (Emphasis addded.)

Thus, the following

## ORDER OF COURT

And now, this January 24, 1985, the suspensions imposed by the order of the Director of the Bureau of Motor Vehicles dated August 17, 1984, are hereby sustained.